**KEVIN J. CARLIN, ESQ.**
143 White Horse Avenue
Hamilton, New Jersey 08610
(609) 581-5260
**Attorney for Plaintiff,**
  **Israel Caraballo**

ISRAEL CARABALLO,

       Plaintiff,

vs.

ANTHONY F. AMBROSE, III,
Police Director, City
of Newark, IRVING BRADLEY, Jr.,
Chief of Police for the City
Of Newark, THE CITY OF NEWARK
POLICE DEPARTMENT, and
THE CITY OF NEWARK,

       Defendants.

: SUPERIOR COURT OF NEW JERSEY
: LAW DIVISION: ESSEX COUNTY
: DOCKET NO.:  ESX-L- 7844-06

Civil Action

**COMPLAINT,
JURY DEMAND AND
RULE 4:5-1 CERTIFICATION**

SUPERIOR COURT OF NEW JERSEY
CIVIL PART
ESSEX VICINAGE

SEP 27 2006

RECEIVED/FILED

Israel Caraballo, an individual residing in the County of Middlesex, State of New Jersey, and an employee of the Police Department of the City of Newark, by his attorney, Kevin J. Carlin, Esq., as and for his Complaint against the defendants herein alleges:

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

### THE PARTIES

1. Plaintiff is now, and at all times material hereto was, employed by the City of Newark as a law enforcement officer in its Police Department. He is presently employed as a Captain in the Newark Police Department. Plaintiff is of Hispanic descent and is a member of the uniformed services of the United States Military serving on active duty.

1

2. Defendant Anthony F. Ambrose, III (hereafter, "Ambrose or Director") was, at all times relevant hereto, the Police Director of the City of Newark Police Department and Plaintiff's supervisor. The Police Director is an appointed official.

3. Defendant Irving Bradley, Jr. (hereafter, "Bradley or Chief"), was, at all times relevant hereto, the Chief of Police of the City of Newark Police Department and Plaintiff's supervisor. The Chief is an appointed official.

4. Defendant Newark Police Department (hereafter the "Department") is a subdivision of the City of Newark. The Department is responsible for law enforcement in the City and supervises Plaintiff's employment.

5. Defendant City of Newark (hereafter the "City") is a municipal corporation of the State of New Jersey. The City is Plaintiff's employer.

## BACKGROUND

6. On September 17, 1990, Israel Caraballo began his employment with the Defendants.

7. During his 16 year career, Caraballo rose in the ranks of law enforcement officers of the City of Newark. From his initial employment as a Patrolman, he became the 11th Sergeant, 7th Lieutenant, and now, only the 4th Captain of Hispanic descent to be promoted by the Department to that rank. The only ranks above Captain in the Department are Deputy Chief and Chief.

## PROMOTIONAL TESTING

8. Promotional testing is a requirement for civil service promotion in New Jersey law enforcement, and particularly, in the Police Department of the City of Newark.

9. In or about October, 2002, the State of New Jersey administered the written Captain's test to registrants for the exam from the City of Newark.

10. In or about April, 2003, a list of 28 candidates passing the written test and the oral exam, and their scores indicating eligibility, was published by the Department and the City.

11. The Defendants rely heavily upon the relevant list in promoting candidates to a position of higher rank. In correspondence dated April 19, 2005, the United States Department of Labor ("DOL") noted in follow-up correspondence to its investigation relative to Plaintiff that, since the year 1998, the City's "selection for promoting Captains was in the order they appeared on the certifications" (referring to the promotion list). In discussing the Plaintiff and the Unnamed Lieutenant, the DOL investigator found that only three (3) candidates were by-passed during the relevant time span, one of them for cause, and that the Plaintiff Caraballo and the Unnamed Lieutenant were the only candidates by-passed for promotion without some other incident to explain the failure to promote.

## PLAINTIFF'S MILITARY SERVICE

12. Before his employment with the Defendants, Caraballo served his country in the uniformed services of the United States Military for nearly 5 years on active duty in the Marine Corps.

3

13. Plaintiff continued his service thereafter as a guardsman in the Air Force National Guard. His current military rank is that of Staff Sergeant and he serves in an Intelligence Staff role at McGuire Air Force Base, Wrightstown, New Jersey.

14. A total of 10 years of service in the Marine Corps and Air National Guard have been contributed by Caraballo to the uniformed services of the United States of America.

15. Israel Caraballo performed his obligations for the Air National Guard while working full-time as a law enforcement officer for the City of Newark, serving weekends and 15 day commitments each year, and serving in addition the following longer stints of service: 7 months at Goodfellow Air Force Base in Texas during 2002, approximately 3 months at McGuire Air Force Base in New Jersey in 2003 and approximately 3 weeks at Intirlik Air Force Base in Turkey in 2004 supporting Operation Enduring Freedom in Iraq and Afghanistan. From May, 2005 through the present, Plaintiff was assigned to McGuire Air Force Base in a full-time capacity and has not returned to work on a regular basis at the Newark Police Department.

16. After the events of 9/11/01, Plaintiff, a Lieutenant at the time, reported for duty as a uniformed serviceman. On various dates thereafter, he took a "Military Leave" pursuant to Police Department policy and existing law.

## A PATTERN OF DISCRIMINATION AGAINST THE MILITARY

17. A white police Lieutenant of the Department also presented for military service at or about the same time as Caraballo (the "Unnamed Candidate" or "Unnamed Lieutenant").

4

18. Although on active duty, both Caraballo and the Unnamed Lieutenant were qualified for the elevation in rank to Captain at the time of the next promotions, having scored highly on the oral and written tests required of candidates, and otherwise possessing the proper qualifications for the position.

19. The Unnamed Candidate scored 2nd highest among the Newark candidates for Captain and Caraballo scored 5th highest among the Newark candidates.

**THE 2004 PROMOTIONS**

20. Two (2) openings for Captain were available to be filled by the Defendants in June, 2004.

21. The highest scoring candidate, a white Lieutenant, was promoted to Captain on June 3, 2004.

22. Another candidate, also a white Lieutenant, not serving in the military at that time and with a score lower than the Unnamed Candidate, was also promoted to Captain on June 3, 2004.

23. The Unnamed Lieutenant was also serving on military duty during the relevant time span and was passed over for a Captain's promotion on June 3, 2004, despite his second position on the scored list of 28 candidates.

24. A candidate scoring lower than the Unnamed Candidate was promoted before him in June, 2004.

25. None of the 2004 candidates promoted were serving on military duty.

26. None of the 2004 promoted candidates were Hispanic.

## **THE 2005 PROMOTIONS**

27. Ten (10) openings for Captain were available to be filled by the Defendants in March, 2005.

28. The Unnamed Lieutenant on leave for military service was promoted to Captain nearly ten (10) months after his first eligibility, on March 23, 2005.

29. One other 2005 candidate, a white Lieutenant, scoring higher than Lieutenant Caraballo was also promoted to Captain in March of 2005.

30. Eight (8) lower scoring 2005 candidates were promoted to Captain on March, 23, 2005.

31. Although he was among the three (3) most qualified to serve as Captain, Caraballo was passed over for the ten (10) promotions to Captain made in March, 2005.

32. Other than the Unnamed Candidate, none of the 2005 candidates promoted were serving on military duty.

33. None of the 2005 promoted candidates was Hispanic.

34. In late December, 2004 or early January, 2005, Caraballo gave a statement to the United States Department of Labor on behalf of the white Lieutenant discriminated against on the basis of his military service.

35. Caraballo was then passed over for the promotion to Captain in March 23, 2005.

36. Plaintiff Caraballo filed his complaint for discrimination in promotion based on his military status with the United States Department of Labor on or about March 24, 2005.

## **PROHIBITED PERSONNEL PRACTICES**

## **EVIDENCED BY STATEMENTS OF THE POLICE DIRECTOR**

36. Before any of the promotions were made, Defendant Ambrose made a pejorative comment to Plaintiff in April, 2004 in the West District Precinct to the effect of:

> "You are gone for military service more than you are here".

37. A similar comment was made to Caraballo while at an Hispanic officers' Association dinner in September 2004. At that time, Police Director Ambrose not only repeated the above statement, but also said to him:

> "Stop getting over, if you want to be promoted,
> start acting like a Captain and stop getting over."

In referring to both his national origin <u>and</u> his military service, Ambrose further stated:

> "I don't have a problem with you being Hispanic,
> I just am not going to promote someone that's
> not going to be here".

38. Caraballo noted to himself the similarity in the comment made by the Police Director about Hispanics, to the often-quoted "some of my best friends are Black, Asian, Hispanic, etc." made by persons falsely believing that they are demonstrating their unbiased and unprejudiced sentiments in asserting "friendship" with persons of other races when, in fact, the speaker is illustrating the opposite: that they can only thinly veil their racial or other biases and prejudices or insensitivities.

7

39. Then-Lieutenant Caraballo was equally certain that the statement of his supervisor indicated that his patriotic military service would be held against him in his employment.

## THE 2006 PROMOTIONS

40. Approximately thirteen (13) openings for Captain were available to be filled by the Defendants in January, 2006.

41. Lieutenant Caraballo was finally promoted to Captain on January 24, 2006. The remaining eligible candidates, twelve (12) other candidates in all, inclusive of the lowest scoring of 28 candidates, were also promoted on the same date.

42. Since the three (3) higher scoring candidates were promoted in the prior two (2) calendar years--along with eight (8) lower scoring candidates--no other 2006 candidate for Captain had a score higher than Lieutenant Caraballo.

43. Among the 2006 candidates promoted, one other was of Hispanic descent. .

44. Other than the Plaintiff, none of the 2006 candidates were serving on military duty in January, 2006.

45. Other than Plaintiff and one other candidate promoted in 2006, none of the other eligible candidates were of Hispanic origin.

46. Caraballo was denied his promotion for a period of at least 9 months.

47. As a result of the failure or refusal of the Defendants to promote the Plaintiff, he suffered pecuniary harm in lost wages, lost seniority, lost pension benefits, lost future wages and other economic harm.

48. The Defendants engaged in harassment, reprisal, retaliation and discrimination in employment and failed to promote Plaintiff for reasons related to:

    a) his testimony to a public agency of the federal government in favor of the other Unnamed Lieutenant also serving in the United States Military;

    b) his own threatened Complaint to the federal government of discrimination and prohibited personnel practices for his service in the United States Military;

    c) his Hispanic national origin; and

    d) his service in the United States Military.

49. The action and inaction of the Defendants was calculated to deter a reasonable employee from lodging a complaint against the employer.

50. The acts of the employer were calculated to abrogate the broad protection of the employee from retaliation that exists in the law to assure that employers cooperate on the primary objectives of the laws against discrimination.

## FIRST COUNT

(THE NEW JERSEY LAW AGAINST DISCRIMINATION)

51. The New Jersey Law Against Discrimination ("LAD") prohibits discrimination in any job-related action, including promotion and compensation, as well as in any other privilege of employment, for various protected categories of persons, including those discriminated against on the basis of national origin or military status.

52. The Defendants violated the protections of the LAD in discriminating against Plaintiff in his employment on the basis of his nationality and military status. Defendants passed over him for promotion in favor of less qualified non-Hispanic candidates not serving in the military of the United States of America.

53. The Defendants had a singular motive, or an unknown mixed motive, for the discrimination against Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants on the First Count in a sum to be ascertained at trial to compensate him for his damages, including damages flowing from emotional distress suffered by the Plaintiff, and for

    a) back and future pay,

    b) lost pension credits,

    c) punitive damages,

    d) pre-judgment interest,

    e) compensation for the adverse tax consequences of a lump sum award,

    f) costs,

    g) attorney's fees,

and for such other and further relief as the Court may deem equitable and just.

## **SECOND COUNT**

[USERRA]

(UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT)

54. Since 1994, a federal law of the United States, commonly referred to as the USERRA, prohibits discrimination in various personnel practices of employers on the basis of military service. The purpose of the Act is to minimize the disadvantages to an employee that occur when an absence from civilian employment is required to serve in this country's uniformed services.

55. Specifically, the USERRA prohibits an employer from denying any benefit of employment on the basis of an individual's membership, application for membership, performance of service, application for service, or obligation for service in the uniformed services. The law protects the employee based on past, present and future military service.

56. The Plaintiff filed with the United States Department of Labor an allegation of discrimination based on military service that shifted the burden of proof to the Defendants to demonstrate that Plaintiff Captain Caraballo's military service was not the motivating factor in the decision not to promote him. Defendants were unable to do so in the past and will, in the future, be unable to do so.

57. At all times material hereto, the Plaintiff was a member of the uniformed services of the United States of America.

58. In or about December of 2004, Plaintiff testified on behalf of the Unnamed Lieutenant in connection with his Complaint to the United States Department of Labor with respect to the Defendants' violation of the Unnamed Candidate's USERRA rights.

59. Plaintiff filed his own Complaint with the United States Department of Labor with respect to the Defendants' violation of his USERRA rights.

60. The Defendants' failure to promote Plaintiff in March of 2005 was reprisal for his threats to file his own DOL complaint against the Defendants or for testifying in or about December 2004 on behalf of the other candidate serving in the United States uniformed services.

61. The Defendants' failure to promote Plaintiff was predicated upon his military service in the uniformed services.

WHEREFORE, Plaintiff demands judgment against Defendants on the Second Count in a sum to be ascertained at trial to compensate him for his damages, including damages flowing from emotional distress suffered by the Plaintiff, and for

    a) back and future pay,

    b) lost pension credits,

    c) punitive damages,

    d) pre-judgment interest,

    e) compensation for the adverse tax consequences of a lump sum award,

    f) costs,

    g) attorney's fees,

and for such other and further relief as the Court may deem equitable and just.

## THIRD COUNT

(BREACH OF CONTRACT AND THE DUTY OF GOOD FAITH AND FAIR DEALING)

62. Plaintiff and Defendant maintained a contractual relationship relative to Plaintiff's employment with Defendant.

63. The law implies in every contractual relationship the covenant of good faith and fair dealing.

64. In performance of their obligations, the Defendants failed or refused to conduct themselves in good faith or to deal fairly with Captain Caraballo during the course of his military service.

65. The Defendants failed to observe the customs and usage previously observed in the promotion of Captains in the City of Newark, specifically, by failing to promote qualified individuals in the order of their certification to serve at that rank, instead opting to by-pass the order when the name of Plaintiff and the Unnamed Candidate then serving in the United States Military were next on the list.

WHEREFORE, Plaintiff demands judgment against Defendants on the Third Count in a sum to be ascertained at trial to compensate him for his damages, including damages flowing from emotional distress suffered by the Plaintiff, and for

a) back and future pay,

b) lost pension credits,

c) punitive damages,

d) pre-judgment interest,

e) compensation for the adverse tax consequences of a lump sum award,

f) costs,

g) attorney's fees,

and for such other and further relief as the Court may deem equitable and just.

## FOURTH COUNT

[CEPA]

(CONSCIENTIOUS EMPLOYEE PROTECTION ACT)

66. The Conscientious Employee Protection Act ("CEPA") is commonly referred to as the Whistleblower Law.

67. The United States Department of Labor is a federal department and a part of the Executive Branch of the United States Government. Under CEPA, the DOL is a 'public body'.

68. Plaintiff disclosed to the public body, those activities of the Defendants that he reasonably believed to be in violation of law.

69. Plaintiff provided information or testimony to the public body conducting an investigation into violations of law by the Defendants.

70. The Defendants retaliated against the Plaintiff with an adverse employment practice for his disclosure to the DOL of the illegal practices of the Defendants.

71. Defendants, or at least one of Plaintiff's supervisors, knew that their passing over of members of the military for promotion was unlawful.

72. The adverse employment action was taken by Defendants after Plaintiff's threatened disclosure. Defendants maintained a perceptible change in their dealings with Plaintiff after the information was provided to the public body.

73. The Defendants cannot demonstrate that the retaliatory action taken against Plaintiff was animated by incompetence, disloyalty, reduction in force or any other legitimate statutory reason.

WHEREFORE, Plaintiff demands judgment against Defendants on the Fourth Count in a sum to be ascertained at trial to compensate him for his damages, including damages flowing from emotional distress suffered by the Plaintiff, and for

      a) back and future pay,

      b) lost pension credits,

      c) punitive damages,

      d) pre-judgment interest,

      e) compensation for the adverse tax consequences of a lump sum award,

      f) costs,

      g) attorney's fees,

and for such other and further relief as the Court may deem equitable and just.

Dated: September 20, 2006

                                                Kevin J. Carlin, Esq.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated: September 20, 2006

_____
Kevin J. Carlin, Esq.

## RULE 4:5-1 CERTIFICATION

I, Kevin J. Carlin, do hereby certify as follows:

1. I am an attorney at law of the State of New Jersey, and I am the attorney for Plaintiff, and as such, am familiar with the facts surrounding this matter.

2. To the best of my knowledge and information, there is no other action pending about the subject matter of this Complaint. Additionally, there are no other persons known to me at this time who should be added as parties to this case, nor are there any other actions contemplated.

3. I do hereby certify that the foregoing statements made by me are true to the best of my knowledge. I hereby certify that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Kevin J. Carlin, Esq.

Dated: September 20, 2006